UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARK GOMEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-130 |
| | § | |
| CRESCENT SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Plaintiffs Mark Gomez, Thomas Pfannstiel, Justin G. Gutierrez and John Gabriel Herrera allege that Defendant Crescent Services, L.L.C. (Crescent) violated provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Pending is Defendant's Motion for Summary Judgment (D.E. 27) to which Plaintiffs have filed a response (D.E. 30), and Defendant has filed a reply (D.E. 38). For the reasons set forth below, the Court grants in part and denies in part the motion for partial summary judgment.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in this court because a substantial part of the actions about which plaintiff complains occurred in Bee County, Texas, which is located in the Southern District of Texas.

## BACKGROUND

Plaintiffs are former employees of Crescent, a company which provides support and logistics services in the oilfield. Crescent's headquarters are in Oklahoma City,

Oklahoma, but the company has a facility in Beeville, Texas. Plaintiffs performed manual labor, including rolling up, laying out, and transporting pipe, as well as observing pumps during the fracking process (Declaration of Mark Anthony Gomez, Jr., Ex. 2 to Resp. to MSJ; D.E. 30-2 at 2). Plaintiff Gomez, representative of the class, routinely worked more than ninety-six hours per week.

Plaintiffs assert that Crescent did not pay them for their straight time and overtime at the rate required by the FLSA. Plaintiffs further assert that Defendant failed to comply with the record-keeping requirements set out in the FLSA. Defendant counters that it paid Plaintiffs pursuant to the Fluctuating Work Week (FWW) method of compensation as allowed under the FLSA, that all Plaintiffs received the compensation they were due, and that it abided by all applicable rules and regulations. Defendant also contends that Plaintiffs falsely reported to Crescent that they were working more hours per week than they actually worked, which caused their hourly rate to drop below minimum wage.

## APPLICABLE LAW

**A. Summary Judgment Standard**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, the

Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings. *See Celotex*, 477 U.S. at 324; *Caboni*, 278 F.3d at 451; Fed.R.Civ.P. 56(e). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Caboni*, 278 F.3d at 451.

### B. Fluctuating Work Week

In general, the FLSA mandates that employers pay employees not less than minimum wage, currently $7.25 per hour, and that employers pay non-exempt employees one-and-one-half times their regular rate of pay for any hours worked over forty during a workweek. 29 U.S.C. §§ 206 and 207. The regulations provide guidance for employers who hire employees who do not work a fixed weekly schedule. Relevant to this case, 29 C.F.R. § 778.114 addresses the situation where an employee paid on a salary basis has

hours of work that fluctuate from week to week, known as a fluctuating work week (FWW).

Where a party is paid in accordance with a FWW arrangement, the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working a fixed number of hours each week. 29 C.F.R. § 778.114(a). Such an arrangement is permissible under the FLSA if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half of his regular rate of pay. *Id.*

Because the salary in a FWW situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular pay rate of the employee will vary from week to week. The rate of pay is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half the rate for the week in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement. *Id.*

The regulations provide the following example of pay in a FWW arrangement for an employee whose total weekly hours never exceed fifty and whose salary of $600 per week is paid with the understanding that it constitutes the employee's compensation, except for overtime premiums, for whatever hours are worked in the workweek:

> If during the course of 4 weeks this employee works 40, 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $15.00, $16.00, $12.00, and $12.50, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $600; for the second week $600; for the third week $660 ($600 plus 10 hours at $6.00 or 40 hours at $12.00 plus 10 hours at $18.00); for the fourth week $650 ($600 plus 8 hours at $6.25, or 40 hours at $12.50 plus 8 hours at $18.75).

29 C.F.R. § 778.114(b).

Before an employer may apply the FWW method, four conditions must be met: (1) the employee's hours must fluctuate from week to week; (2) the employee must receive a fixed salary that, except for the overtime premium, does not vary with the number of hours worked during the week; (3) the fixed amount must be sufficient to provide compensation for each week at a regular rate that at least equals the minimum wage; and (4) the employer and employee must have a "clear and mutual understanding" that the employer will pay the fixed salary regardless of the numbers of hours worked. *Brantley v. Inspectorate America Corp.*, 821 F.Supp.2d 879, 888 (S.D. Tex. 2011) (citing 29 C.F.R. § 778.114(a),(c) and *O'Brien v. Town of Agawam*, 350 F.3d 279, 288 (1st Cir. 2003)). The employee bears the burden of proving that the employer did not meet the requirements for applying the FWW method. *Samson v. Apollo Resources*, 242 F.3d 629, 636 (5th Cir. 2001).

Plaintiffs allege that Defendant's attempt to pay them via the FWW method fails because the fixed salary was not sufficient to provide compensation for each week at a

rate that equaled the minimum wage. Plaintiffs point out the following language in 29 C.F.R. § 778.114(a):

> [The FWW] salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate of not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

And § 778.114(c) states the following:

> The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act . . . .

In this case, the salary Crescent paid to Plaintiffs was often insufficient to assure that the average hourly earnings did not fall below the minimum hourly wage. Plaintiffs submitted evidence that Gomez's salary fell below minimum wage in sixteen out of forty-five weeks, or approximately 36% of the time; Herrera's regular rate fell below minimum wage ten out of twenty-one weeks, or 48% of the time; Gutierrez's regular rate fell below minimum wage nineteen out of forty-six weeks or 41% of the time; and Pfannstiel's rate fell below minimum wage three out of thirty-one weeks, or 10% of the time. In the weeks where Plaintiffs' hourly rate fell below minimum wage, Defendant gave the employees a "bump-up," increasing the amount of pay so that Plaintiffs received minimum wage for all the hours worked plus the 50% overtime premium for additional hours worked over forty.

Defendant submitted two letters from the United States Department of Labor (DOL) issued in 1969 regarding the FWW method of compensation, both of which indicate that in order for an employer to successfully implement the FWW method, the salary must be reasonably calculated to provide that the statutory minimum wage be paid for the first forty hours worked each week. The pay plan will not fail if, due to emergencies or unforeseen circumstances, the employer fails to pay minimum wage for a few weeks out of an annual period. Under those circumstances, the employer still has a statutory obligation to pay for all hours worked by the employee at a rate of not less than minimum wage and for overtime hours at one-half that rate.

In an example given in the letter dated February 6, 1969, the salary failed to result in payment of the minimum wage for five weeks out of the annual period (DOL letter No. 945; D.E. 30-7). The letter added that "[t]he establishment of any general tolerance permitting a frequency for salaries to yield a subminimum wage would be inconsistent with the statutory mandate of section 6 of the Act." (*Id.*) In the second letter, it was noted that if an employee's salary failed to equal the statutory minimum wage in as many as twenty-seven workweeks in one year, it would render moot any consideration that such a situation could have been anticipated (DOL letter of June 12, 1969; D.E. 30-8). The letter adds that "for purposes of administrative settlement only," back wages are computed by multiplying all the hours worked by the applicable minimum wage and the overtime hours by half-time. The difference between what was due and what was actually paid at a subminimum rate is the amount of back wages due in the particular week. In addition,

> [i]n order to ensure that his fluctuating workweek plan will be valid in the future, the employer must reach a new understanding with the employee, either to work no hours above that number which would provide at least the applicable minimum wage at all times or to compute on the fluctuating workweek principle only up to the point where the minimum wage would be penetrated if more hours were worked and then compute the overtime compensation for hours above this number at full time-and-one-half the applicable minimum wage.

(*Id.*) Defendant relies on these letters, as well as on *Ransom v. M. Patel Enterprises, Inc.*, 734 F.3d 377, 387 (5th Cir. 2013), to argue that it properly administered the FWW method of compensation because every time Plaintiffs' hourly rate dropped below minimum wage, it was bumped up to minimum wage and they received a 50 percent overtime premium.

## DISCUSSION

### A. Alleged Padding of Hours

Crescent contends that it relied on employees to honestly report the hours they worked each week. In early 2012, Crescent noticed that reported hours were much higher at the Beeville location, where Plaintiffs worked, than they were at other locations. When a Crescent representative investigated the reason for the high number of reported hours, he came to believe that some employees were falsely claiming a greater number of hours on their timesheets than they actually worked. After the representative met with the employees in June 2012 and told them to stop exaggerating the number of hours they worked, the number of hours reported decreased significantly (Aff. of James Shaw, Ex. 2 to MSJ; D.E. 27-10).

Crescent has not submitted any evidence regarding individual employees padding their hours or the number of hours, if any, that they falsely reported. Plaintiff Gomez submitted a declaration stating that he never inflated the number of hours that he worked (Decl. of Mark Gomez, att. to Resp. to MSJ; D.E. 30-1 at 1). Thus, fact issues exist regarding whether Plaintiffs exaggerated the number of hours they worked, and, if so, by how many. As discussed below, resolution of this fact issue is relevant to the legal issues under consideration.

### B. Effect of Salary Resulting in Subminimum Wage

Defendant argues that *Ransom* and *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988) support its argument that in the weeks the agreed-upon FWW salary failed to compensate Plaintiffs at minimum wage, its only obligation was to raise the base salary to minimum wage and pay a 50 percent premium for the overtime hours. Defendant is correct that both of these cases state that in situations where the salary fails to compensate the employee at minimum wage, "'minimum wage must be paid and *that minimum serves as the regular rate of pay* for purposes of computing overtime payments.'" *Ransom*, 734 F.3d at 386 (quoting *Blackmon*, 835 F.2d at 1138, n. 1).

Nevertheless, neither of these cases addresses the particular issue raised here: whether the payment of a salary that fails to compensate employees at a base rate of minimum wage more than a few times disqualifies the employer from using the FWW method altogether. Both *Ransom* and *Blackmon* are classification cases, where the main issue was whether the employees were exempt from overtime. After it was decided that the employees should have been paid on an hourly basis, the court had to determine how

to calculate their wages.  There was no evidence presented in either case that the salary resulted in an hourly rate that fell below minimum wage even one time, much less for an extended period of time.  *See Blackmon*, 835 F.2d at 1138, n. 1 and *Ransom*, 734 F.3d at 387.

In *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884 (E.D. Tex. 1997), employees made claims similar to the claims made here--that their employer improperly compensated them for overtime work in violation of the FLSA.  *Id.* at 888.  The court recited the standard regarding the amount of the set salary as discussed in 29 C.F.R. § 778.114 and the DOL opinion letters:

> [T]he employee's salary must be large enough to ensure that her hourly rate never dips under the applicable minimum wage . . . . 29 C.F.R. § 778.114(c).  This condition exists if salary actually proves adequate to sustain an average hourly rate at least equal to the applicable minimum wage.  *See id.*  It also prevails if salary "is reasonably calculated to prove" an average hourly rate at least equal to the applicable minimum wage.  Opinion Letter No. 945, [__ Wages-Hours Lab.L.Rep. (CCH) ¶ 30,957 (Feb. 6, 1969] [hereinafter Opinion Letter No. 945]; *see* Opinion Letter No. 1010 [__ Wages-Hours] Lab.L.Rep. (CCH) ¶ 30,557 (June 12, 1969) [hereinafter Opinion Letter No. 1010].  The latter situation relates to those infrequent occasions when unforeseen events cause the employee to work so many hours that her salary fails to support an hour rate at least equal to the applicable minimum wage.  *See* Opinion Letter No. 945; *see also* Opinion Letter No. 1010.  In such a circumstance, the employer must give the employee (1) an additional amount sufficient to generate an average hourly rate equal to the applicable minimum wage when that amount is added to salary and the result is divided by the number of hours worked and (2) the difference between the amount of overtime compensation yielded under the fluctuating workweek method when the product of the applicable minimum wage and the number of hours worked serves as the salary figure and the amount of overtime compensation actually paid.  *See* Opinion Letter No. 945; see also *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 n. 1 (5th Cir. 1988);

> *cf* Opinion Letter No. 1010 ("For purposes of administrative settlement only, back wages are computed in such a workweek by multiplying all the hours worked by the applicable minimum wage, and the overtime hours above the overtime hours above the applicable overtime standard by half-time."). However, if breaches of the applicable minimum wage become too common, then the employer must cease using the fluctuating workweek method unless it "reach[es] a new understanding with the employee, either to work no hours above the number which would provide at least the applicable minimum wage at all times or to compute on the fluctuating workweek principle only up to the point where the minimum wage would be penetrated if more hours were worked and then compute the overtime compensation for hours above this number at full time and one-half the applicable minimum wage." Opinion Letter No. 1010.

*Cash*, 2 F.Supp.2d at 894-895. The court noted that liability arises if the employer either miscomputes overtime pay or uses the FWW method despite the absence of one or more criteria for doing so. *Id.* at 896. If an employee proves a misuse of the FWW method and a finding is made that the employer regularly violated the minimum wage criterion, the employee is entitled to compensatory damages equal to the difference between the amount of overtime compensation owed when total remuneration is divided by forty, the result is multiplied by 1.5, and that product is multiplied by the number of hours over forty; and the amount of overtime compensation actually paid in each week the FWW method was used. *Cash*, 2 F.Supp.2d at 896 (citing Opinion Letter No. 945).

In *Cash*, the only evidence presented by the plaintiffs was that one employee's salary was insufficient to meet minimum wage on three occasions and another employee's salary was insufficient on one occasion. Each time it happened, the employer gave the employee additional compensation equal to minimum wage for the regular rate and one-and-a-half times minimum wage for the overtime hours. *Cash*, 2 F.Supp.2d at

899-900. The court found that four violations involving two employees were two few to result in the FWW being unavailable to the employer. *Cash*, 2 F.Supp.2d at 907 and n. 53.[1]

Other courts have engaged in similar analyses when examining allegations that an employer misused the FWW because the fixed salary failed to compensate at minimum wage. *See Davis v. Friendly Express, Inc.*, No. 02-14111, 2003 WL 21488682 (11th Cir. 2003) (When fixed salary failed to compensate one employee at minimum wage four weeks out of eight months, and another employee one week out of fourteen months, FWW continued to be available to employer because the violations happened only in a few isolated workweeks); *Aiken v. County of Hampton*, 977 F.Supp. 390, 398-399 and n. 10 (D. S.C., 1997) (Where employer bumped up employees' salaries 450 times in three years, salaries were not reasonably calculated to provide for the statutory minimum wage amount; conversely where salaries were bumped up five times in two years, limited number of adjustments indicates they were employed as a result of unforeseen circumstances); *Ayers v. SGS Control Services, Inc.*, No. 03 Civ. 9077 RMB, 2007 WL 646236 (S.D.N.Y. 2007) (summary judgment precluded in part because of fact issue regarding whether employee's bump-ups were sufficiently infrequent and unforeseeable to satisfy 29 C.F.R. § 778.114(c)).

---

[1]The *Cash* plaintiffs also submitted reports on the amount of overtime submitted by some employees and a list of employees purportedly due overtime. The court found the evidence insufficient to create a fact issue regarding whether the minimum wage violations were numerous enough that the FWW method was unavailable to the employer because the evidence was disorganized and did not identify persons whose hourly wage fell below minimum wage, the total number of violations, or the total of how many employees were paid during the relevant period. *Cash*, 2 F.Supp.2d at 906-907.

In the instant case, Crescent failed to meet the minimum wage requirement often enough that a finding could be made that it misused the FWW. Under those circumstances, the FWW method of compensation would not be available and Plaintiffs would be entitled to damages amounting to the difference between the amount of compensation they actually received, and the amount they would have been entitled to if their agreed-upon salary was intended to compensate them for forty hours of straight time and time-and-a-half for hours worked over forty.

However, significant fact issues exist regarding the reason for the high number of hours worked by Plaintiffs. Defendant contends that Plaintiffs were falsely inflating their hours and that when the employees were told in the first week of June 2012 that it had been discovered that they were reporting more hours than they were working, the hours reported decreased significantly.

Payroll records for Plaintiff Gomez show that for the first eighteen weekly pay periods after he was hired, November 11, 2011 through March 17, 2012, his salary failed to compensate him at the hourly minimum wage three times. After the second time his hourly rate fell below minimum wage, he received a pay increase (Gomez summary of hours and wages, D.E. 30-9 at 1). During Gomez's next eleven pay periods, March 18, 2012 through June 2, 2012, his salary failed to compensate him at minimum wage all eleven times. Gomez's salary was increased again effective May 16, 2012 (Change Form; D.E. 27-5). From the first week of June, after employees were told to stop falsely reporting more hours than they worked, until Gomez was terminated at the end of

November 2012, his regular hourly rate fell below minimum wage two more times (Gomez summary of hours and wages, D.E. 30-9 at 1).

Plaintiff Herrera's records show that from the time he was hired in March 2012 until the first week of June 2012, his salary resulted in a sub-minimum hourly wage nine out of thirteen pay periods (Herrera summary of hours and wages, D.E. 30-11). After Crescent admonished the employees about reporting their hours, Herrera's hourly rate fell below minimum wage once in the next nine pay periods he was employed at Crescent (*Id.*)

Plaintiff Gutierrez's records show that from November 6, 2011 through March 10, 2012, his hourly rate fell below minimum wage seven out of eighteen pay periods (Gutierrez summary of hours and wages, D.E. 30-10 at 1). He received an increase in his hourly wage starting the week of February 19, 2012 (*Id.*) From March 11, 2012 through June 2, 2012, his hourly rate fell below minimum wage twelve out of twelve pay periods (*Id.*) After being admonished about over-reporting hours, Gutierrez's hourly rate fell below minimum wage once more in the next sixteen pay periods (*Id.*)

Finally, records for Plaintiff Pfannsteil show that during thirty-one pay periods, from September 18, 2011 through April 21, 2012, his base hourly rate fell below minimum wage three times (Pfannsteil summary of hours and wages, D.E. 30-12 at 1).

If Plaintiffs lied about the number of hours they worked and inflated them to such an extent that their base hourly rate fell below minimum wage, Defendant cannot be liable for the agreed-upon salary being insufficient to pay minimum wage for the reported hours. Conversely, if Plaintiffs actually worked all the hours, the agreed-upon salary was

insufficient to compensate them at minimum wage a substantial amount of the time, and Crescent cannot argue that the sub-minimum wage was unforeseen or unanticipated. This fact issue is best decided by a jury and precludes a finding of summary judgment for Crescent.

### C. Record Keeping

In their complaint, Plaintiffs alleged a cause of action for FLSA record-keeping violations, asserting that Crescent failed to make, keep, and preserve accurate records with respect to Plaintiffs and other laborers, including hours worked each workday and total hours worked each workweek. In its motion for summary judgment, Crescent submitted affidavit evidence that it maintained records in accordance with 29 C.F.R. §§ 516.2 and 516.6 (Aff. of Meagan Cruson, Ex. 1 to MSJ; D.E. 27-1 at 6). Plaintiffs failed to submit evidence showing the existence of a fact issue. Accordingly, summary judgment is entered for Crescent on Plaintiffs' record-keeping allegation.

### CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (D.E. 27) is GRANTED in part and DENIED in part. Plaintiffs' allegation that Defendant failed to keep adequate payroll records is DISMISSED. Fact issues preclude a finding that Defendant is entitled to summary judgment on Plaintiffs' allegation that Defendant misused the FWW method of compensation and Plaintiffs may proceed on that claim.

ORDERED this 10th day of June, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE